IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOSEPH DERRICK FORSYTHE,<br><br>Petitioner,<br><br>vs.<br><br>JAMES SALMONSON,<br><br>Respondent. | Cause No. CV 18-30-BLG-TJC-SPW<br><br>FINDINGS AND RECOMMENDATIONS |

This case comes before the Court on Petitioner Joseph Derrick Forsythe's application for writ of habeas corpus under 28 U.S.C. § 2254. Forsythe is a state prisoner proceeding pro se.

**I.   Procedural History**

Forsythe challenges a January 5, 2015, judgment of conviction for felony Tampering with Witnesses/Informants and misdemeanor Partner/Family Member Assault, imposed following a jury trial in Montana's Thirteenth Judicial District, Yellowstone County. Pet. (Doc. 1 at 1-2). Forsythe was designated as a persistent felony offender and received a fifteen-year prison sentence with five of the years suspended. *Id*. at 2.

A central issue in Forsythe's trial was whether letters Forsythe sent to his wife, Giana, following his arrest on the Partner/Family Member Assault, were

1

confidential marital communications protected by the spousal privilege doctrine. The letters were introduced at his trial in support of the tampering charge, over Forsythe's objection. Following his conviction, Forsythe filed a direct appeal with the Montana Supreme Court and argued: 1) the letters to his wife were protected by spousal privilege under Montana law;[1] and, 2) the district court erred in allowing law enforcement officer Brad Tucker to testify as a lay witness to identify the handwriting on the letters.

The Montana Supreme Court determined that the letters written by Forsythe to his wife were protected by the spousal privilege, but found the letters containing intimidating and threatening language were not communicated in reliance upon the confidence of the marital relationship. Thus, the district court's admission of the letters was not an abuse of discretion. *State v. Forsythe*, 2017 MT 61, ¶¶ 33-35, 387 Mont. 62, 390 P. 3d 931. Additionally, the Court determined it was trial error and an abuse of discretion to allow Officer Tucker to testify as a lay witness to

---

[1] Mont. Code Ann. § 26-1-802 provides:

> Neither spouse may, without the consent of the other, testify during or after the marriage concerning any communication made by one to the other during their marriage. The privilege is restricted to communications made during the existence of the marriage relationship and does not extend to communications made prior to the marriage or to communications made after the marriage is dissolved. The privilege does not apply to a civil action or proceeding by one spouse against the other or to a criminal action or proceeding for a crime committed by one spouse against the other or against a child of either spouse.

2

authenticate the handwriting in the letters, but found the error was harmless because the foundational authenticity of the letters was established independently of Tucker's testimony. *Id.* at ¶¶ 47-50. The Court affirmed Forsythe's convictions.

Following his direct appeal, Forsythe apparently filed a petition for postconviction relief in December of 2017, but states there was "no result." (Doc. 1 at 2). He also advises that he did not appeal the postconviction decision because the "[a]rgument was flawed." *Id.*[2]

## II.    Forsythe's claims

In his petition, Forsythe claims: (1) trial counsel provided ineffective assistance by failing to offer a lesser included instruction on violation of a restraining order, pursuant to MCA § 45-5-209, (*id.* at 2-4), and, (2) his right to due process was violated when he was denied a *Finley* hearing and the appointment of new counsel prior to trial (*id.* at 5-9).[3]

In a supplement filed June 13, 2018, Forsythe sought to add additional

---

[2] Aside from his direct appeal, the Montana Supreme Court Docket does not reveal any other actions to which Forsythe was a party. See, https://supremecourtdocket.mt.gov/ (accessed August 26, 2019).

[3] A *Finley* hearing may occur following a defendant's complaint about the effectiveness of counsel. Upon showing of a substantial complaint, the district court conducts a hearing to determine the validity of defendant's claim. *State v. Finley*, 276 Mont. 126, 142-43, 915 P. 2d 208, 218-19 (1996), overruled on other grounds by *State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P. 3d 817.

claims to his petition, and attached a portion of a dissent from the Montana Supreme Court's decision on direct appeal, as well as documents from his postconviction proceedings. (Doc. 8). In his supplement, Forsythe claims (3) the trial court erred when it admitted privileged marital communications into evidence, *id*. at 3-5; (4) the trial court erred in admitting the non-expert testimony of Officer Tucker, *id*. at 5-8; and, (5) he was provided ineffective assistance of trial and appellate counsel. *Id*. at 8-10.

### III. Analysis

As explained below, Forsythe's petition should be denied and dismissed. He has failed to demonstrate adequate cause to excuse the default of Claims 1, 2, and 5; Claim 3 is not cognizable in federal habeas; and Claim 4 does not survive deferential review under 2254(d).

### A. Procedurally Defaulted Claims – Claims 1, 2, and 5

Before a state prisoner may present a claim to a federal court, he must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement

prevents the federal court from "upset[ting] a state court conviction" without first allowing the state courts an "opportunity to…correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). But even if a petitioner's claim is procedurally defaulted, a federal district court may still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court, *Schlup v. Delo*, 513 U.S. 298, 329 (1995); or (2) a showing of adequate legal cause for the default and prejudice arising from the default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011)(en banc). In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence

5

– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The habeas court then considers all the evidence – old and new, incriminating and exculpatory, admissible at trial or not. *House v. Bell*, 547 U.S. 518, 538 (2006). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id*. (quoting *Schlup*, 513 U.S. at 330).

Forsythe was advised that several of his claims appeared to be procedurally defaulted, and he was advised of the ways in which he might make a showing to excuse the procedural default of these claims. See, (Doc. 9 at 3-6.) After being granted several extensions, Forsythe responded to this Court's order and also provided a supplement to his response. (Docs. 20 & 21.)

Forsythe's response is somewhat difficult to follow. Nevertheless, it appears he first argues that all the letters exchanged between he and Giana should have been introduced at trial, because introduction of all the letters would have "established a whole different scenario to a whole different charge." (Doc. 20 at 2.) Forsythe appears to assert that, had the jury known that Giana continuously wrote to him while he was incarcerated, they would have not found him guilty of witness tampering. *Id*. at 1. In his supplement, Forsythe attaches a motion filed in the district court in which he alleges Giana was threatened by the prosecution if

she didn't cooperate and that her letters would establish as much. See, (Doc. 21 at 8.) Forsythe asserts the prosecution committed a *Brady* violation by not introducing Giana's letters to Forsythe during trial. (Doc. 20 at 2-3.)[4]

Second, Forsythe argues trial counsel performed deficiently by not requesting a lesser included instruction for the misdemeanor offense of "violation of the restraining order." *Id*. at 4; 8-9. Forsythe contends that, had this instruction been given and the letters from Giana been presented to the jury, he would have perhaps been convicted of the misdemeanor offense, but no reasonable juror would have found him guilty of felony witness tampering. *Id*. at 4-5. Thus, Forsythe believes this showing of purported innocence allows him to pass through the *Schlup* gateway. *Id*. at 5.

Finally, Forsythe argues the district court erred when it allowed Officer Tucker to testify as a lay witness regarding Forsythe's handwriting, and that the admission of his testimony was detrimental and prejudicial. *Id*. at 5-7.

### 1. *Brady* violation/Admission of letters

The rule established in *Brady v. Maryland*, 373 U.S. 83 (1963), requires the prosecution to disclose to the defense any materially exculpatory evidence in its possession. A *Brady* violation occurs when: 1) evidence is favorable to the

---

[4] Conversely, however, Forsythe also argues that none of the letters should have been admitted because they constituted protected communication under Montana's spousal privilege doctrine. *Id*. at 2-3.

7

accused because it is exculpatory or impeaching; 2) the evidence is not disclosed by the prosecution; 3) the nondisclosure results in prejudice to the accused. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

There is no *Brady* violation here. Forsythe was obviously aware of this information before he went to trial, since the letters he alleges were suppressed were originally sent to him. It also appears Forsythe had these letters in his possession and provided copies to his attorney. See e.g., (Doc. 20 at 9); (Doc. 21 at 8.) Since he had possession of these letters himself, *Brady* is not implicated. "There is no *Brady* violation when the accused or his counsel knows before trial about the allegedly exculpatory information and makes no effort to obtain its production." *U.S. v. Valera*, 845 F. 2d 923, 927-28 (11th Cir. 1988).

### 2. Lesser included instruction

Following Forsythe's arrest for Partner or Family Member Assault, the court issued a no contact order pursuant to Section 45-5-209(1), MCA; Forsythe was provided a copy of the order. See, (Doc. 1-1 at 11.) The order directed Forsythe that he was not to contact Giana in person, by a third party, by electronic communication, or in writing; he was not to harass, annoy, or disturb Giana's peace; he was prohibited from having care, custody, possession, or control of any firearm or ammunition; he was to stay 750 feet away from Giana's residence, work place, or location; and he could not take, hide, sell, damage or dispose of Giana's

property or property held in joint ownership with Giana, or acquired during the parties' marriage. *Id.* The order advised Forsythe that violation of the order was a criminal offense that could result in his arrest. *Id.* Forsythe argues his trial attorney failed to request a lesser-included instruction for violation of this order of protection.

Montana courts utilize a two-step test, first applied in *State v. Castle*, 948 P.2d 688, 690-91 (Mont. 1997), to determine whether a trial court is obligated to give a proposed lesser-included instruction at trial. Under the "*Castle* test" a court is to: (1) determine whether, as a matter of law, the offense for which the instruction is requested is a lesser-included offense of the offense charged; and (2) determine if the proposed lesser-included offense instruction is supported by the evidence in the case. See e.g., *State v. Freiburg*, 2018 MT 145, ¶ 13, 391 Mont. 502, 419 P. 3d 1234 (citations omitted). "

A lesser-included offense is defined in part as an offense that 'is established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *State v. Daniels*, 2017 MT 163, ¶ 14, 388 Mont. 89, 397 P. 3d 460, 463 (quoting § 46-1-202(9)(a), MCA). "The term 'facts' in this statute 'refers to the statutory elements of the charged offense and not to the individual facts of the case.'" *Id*.

The Montana Supreme Court has held that the second prong is met when

there is "some basis from which a jury could rationally conclude that the defendant is guilty of the lesser, but not the greater offense." *State v. Castle*, 285 Mont. 363, 369, 948 P. 2d 688, 690 (1997).

The elements which needed to be established in Forsythe's case for the offense of tampering with a witness were:

1) That the Defendant believed that an official proceeding or investigation was pending or about to be instituted; and

2) That the Defendant attempted to induce or otherwise cause Giana Forsythe to testify or inform falsely or to withhold any testimony, information, document or thing; and

3) The Defendant acted purposely or knowingly.

(Doc. 1-1 at 15)(Jury Instruction No. 17).

Conversely, under Mont Code Ann. § 45-5-209(8)(a) "[a] person commits the offense of violation of a no contact order if the person, with knowledge of the order, purposely or knowingly violates any provision of any order issued under this section."

Forsythe cannot meet the first requirement of the *Castle* test. Witness tampering requires one to know that an official proceeding or investigation is pending, and then attempt to cause another to testify falsely or withhold testimony or information in that proceeding. Whereas one violates a no contact order when, having knowledge of the order, an individual purposely or knowingly violates one of its provisions. Plainly, violation of a no contact order is not "established by

10

proof of the same or less than all the facts required to establish the commission" of witness tampering. Violation of a no contact order clearly requires proof of different elements than witness tampering. In fact, the two offenses share no common elements.

Thus, it was not error for trial counsel to fail to request a lesser-included instruction.

### 3. Officer Tucker's testimony

Finally, Forsythe contends it was error to admit Officer Tucker's handwriting identification testimony. But as set forth above, the Montana Supreme Court agreed the trial court erred in this admission. The Court also found, however, that the error was harmless because there was sufficient and compelling evidence, independent of Tucker's testimony, to establish that Forsythe was the author of the letters. This evidence included Giana's unequivocal testimony that she received the correspondence from her husband; the jury's ability to compare the letters with Forsythe's distinctive writing with a signed "Notice of No Contact" which was also admitted into evidence; and the district court's finding that Forsythe's writing was "so distinct" that "anybody" could identify it. See, *Forsythe*, 2017 MT at ¶¶ 45-49.

### 4. Actual innocence showing

Consequently, each argument presented by Forsythe in support of his claim

of actual innocence fails to establish a compelling claim of actual innocence. Taken together, the cumulative effect is similarly unavailing. Forsythe has failed to meet the requisite standard to satisfy the *Schlup* gateway. Moreover, Forsythe has presented no new credible evidence – he simply restates arguments already presented on direct appeal or in support of his petition for habeas relief before this Court. The evidence presented does not establish that "no reasonable juror would have convicted him" of felony witness tampering. See, *Bousley*, 523 U.S at 623. Accordingly, Forsythe has not made the necessary showing of actual innocence which would enable him to pass through the narrow *Schlup* gateway and allow this Court to hear his defaulted claims. These claims are procedurally defaulted without excuse and should be denied.

### B. Claim 3 – Not Cognizable in Federal Habeas

To the extent Forsythe complains that some of his letters should have been protected marital communications, the Montana Supreme Court determined that threats contained in the letters are not protected marital communications under state law. See, *Forsythe*, 2017 MT at ¶¶ 33-35. The Montana Supreme Court's decision and application of Montana's spousal privilege is exclusively within its province. Neither this Court, nor the United States Supreme Court for that matter, may question the Montana Supreme Court's interpretation of Montana law. See, e.g., *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a

federal habeas court to reexamine state court determinations on state law questions."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."). This claim turns on state law, implicating no federal rights. The claim is not cognizable in federal habeas and should be denied.

### C. Claim 4 – 28 U.S.C. § 2254(d) Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by The Supreme Court of the United States," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292 (2013). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, __ U.S. ___, 135 S. Ct. 2187, 2198

(2015) (citations omitted). Accordingly, this Court is constrained by AEDPA's standard of review.

As set forth above, the Montana Supreme Court determined the trial court erred by admitting Officer Tucker's handwriting identification testimony, but found the trial error was harmless because there was other testimony to establish the foundational authenticity of Forsythe's letters. While Forsythe takes issue with this decision, it is unclear what part of the decision he finds to be unreasonable or contrary to federal law. The Court presumes he is attempting to advance a violation of his right to due process.

Nevertheless, a state court evidentiary ruling admitting evidence, even if erroneous under state law, is not a basis for federal habeas relief unless the ruling renders the state proceeding so fundamentally unfair as to violate due process. *Estelle*, 502 U.S. at 68; *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (if evidence is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief"). The Supreme Court has stated, however, that the category of violations that offend "fundamental fairness" has been defined very narrowly. *Estelle*, 502 U.S. at 72-3. Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F. 3d 1159, 1172 (9th Cir. 2005).

As set forth above, there was evidence aside from Officer Tucker's testimony that established the authenticity of the letters, including the testimony of Forsythe's wife, Giana, who was the recipient of the letters. This Court agrees with the state court's finding. Forsythe has not established that Tucker's testimony was of such a quality that it prevented a fair trial. The state court's resolution of this claim was not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This claim does not warrant habeas relief.

### D. Conclusion

Forsythe's petition should be denied. Claims 1, 2, and 5 are procedurally defaulted without excuse. Claim 3 is not cognizable in federal habeas, and Claim 4 does not survive review under AEDPA.

### E. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Forsythe has not established an adequate basis to set aside the procedural default of three of his claims. The remaining claims are either not cognizable in federal habeas and/or do not survive deferential review under 28 U.S.C. § 2254(d). Thus, there are no close questions and there is no basis to encourage further proceedings at this time.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Mr. Forsythe's Petition (Doc. 1) and Supplement (Doc. 8) should be DENIED.

2. The Clerk of Court should be directed to enter a judgment in favor of Respondents.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Forsythe may object to this Findings and Recommendation within 14 days.[5] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

---

[5] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise

novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Forsythe must immediately notify the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of his case without notice to him.

DATED this 21st day of October, 2019.

                                                                           _/s/ Timothy J. Cavan_
                                                                           Timothy J. Cavan
                                                                           United States Magistrate Judge

---

expire under Rule 6(a)."  Therefore, since Forsythe is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.